**United States District Court**
For the Northern District of California

1
2
3
4                IN THE UNITED STATES DISTRICT COURT
5             FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7    COACH, INC., a Maryland          )  Case No. 10-5151 SC
     corporation and COACH SERVICES,  )
8    INC., a Maryland corporation,    )  DEFAULT JUDGMENT
                                       )
9                  Plaintiffs,         )
                                       )
10        v.                           )
                                       )
11                                     )
     DIVA SHOES & ACCESSORIES, an      )
12   unknown business entity; HERYADI  )
     YUSUF, an individual; RIFKY YUSUF,)
13   an individual,                    )
                                       )
14                 Defendants.         )
                                       )
15                                     )
                                       )
16   _____  )

17   I.   **INTRODUCTION**

18        Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs"

19   or "Coach") now seek the entry of a default judgment against

20   Defendants Diva Shoes & Accessories, Heryadi Yusuf, and Rifky Yusuf

21   ("Defendants").  ECF No. 11 ("Mot.").  Coach filed this action on

22   November 12, 2010, asserting federal claims for trademark

23   counterfeiting and infringement, 15 U.S.C. § 1114, false

24   designation of origin, id. § 1125(a), and trademark dilution, id. §

25   1125(c), along with related claims under state law, for Defendants'

26   alleged sale of counterfeit Coach merchandise.  See ECF No. 1

27   ("Compl.").  The Clerk of the Court entered default against

28   Defendants on February 3, 2011.  ECF No. 10.  On April 5, 2011,

United States District Court
For the Northern District of California

1  after reviewing the instant Motion, the Court ordered Coach to

2  provide supplemental evidence of certain details about Defendants'

3  infringing conduct.  ECF No. 15 ("Apr. 5, 2011 Order").  Coach

4  filed a supplemental brief on April 12, 2011 addressing the Court's

5  concerns.  ECF No. 16 ("Pl.'s Supp. Br.").  Having considered the

6  papers submitted by Plaintiffs, this Court concludes that an award

7  of default judgment against Defendants is appropriate, and GRANTS

8  Plaintiffs' Motion.

9

10  **II.**   **BACKGROUND**

11      Except where otherwise indicated, the following allegations

12  are taken from Coach's Complaint.  For over sixty years Coach has

13  been in the trade of luxury fashion accessories.  Compl. ¶ 11.

14  Coach manufactures, markets, and sells a variety of goods,

15  including handbags, wallets, eyewear, footwear, jewelry, and

16  watches.  Id.  Coach sells its goods through its own specialty

17  retail stores, department stores, catalogs, and via the Internet.

18  Id.  Coach owns a number of federally registered trademarks and

19  assorted design components (collectively, "Coach Marks") that it

20  uses on its products.  Id. ¶ 12.  The Coach Marks are valuable

21  because they are affiliated with billions of dollars in sales

22  volume and more than a hundred million dollars have been expended

23  in advertising and marketing associated with the trademarks.  Id. ¶

24  16.

25      Coach alleges that Defendants used reproductions of the Coach

26  Marks in commerce in connection with the purchase, advertising and

27  sale of counterfeit products without Coach's consent at the store

28  Diva Shoes & Accessories ("Diva"), located at 7710-3 Serramonte

1  Center in Daly City, California.  Id. ¶¶ 18-25.  Coach further

2  alleges: that Defendants Heryadi Yusuf and Rifky Yusuf were the

3  moving forces behind the infringing activities; that Defendants

4  acted with knowledge of Coach's ownership of the Coach Marks and

5  with the intention to unfairly benefit from the goodwill inherent

6  in the Coach Marks; and that Defendants' use of the Coach Marks is

7  likely to cause confusion or mistake or to deceive customers and

8  has thereby caused damage to Coach.  Id. ¶¶ 22, 27, 36-38.

9      On September 12, 2009, private investigators hired by Coach

10 visited Diva and discovered merchandise bearing Coach Marks

11 displayed for sale.  Id. ¶ 18; Buckner Decl. ¶ 5.[1]  They examined

12 these items and determined them to be counterfeit.  Id.  The

13 counterfeit Coach items bore reproductions of at least four Coach

14 Marks.  Buckner Decl. ¶ 6.  The investigators served Diva employee

15 Teresa Lai with a cease-and-desist letter.  Id.; Compl. ¶ 18.

16     In August 2010, a private investigator returned to Diva and

17 again discovered counterfeit Coach merchandise on display.  Compl.

18 ¶ 19.  He observed five counterfeit Coach handbags and four

19 counterfeit Coach wallets displayed for sale and purchased one

20 counterfeit Coach handbag for $43.69.  Buckner Decl. ¶ 7.  He also

21 obtained a business card from Diva bearing the names of individual

22 Defendants Heryadi Yusuf and Rifky Yusuf.  Id. ¶ 8 Ex. 1.

23     On August 19, 2010, the private investigators assisted the

24 Daly City Police Department in a criminal action at Diva.  Compl. ¶

25 20.  Defendant Heryadi Yusuf was identified as the owner of Diva

26

27 [1] Coach submitted a declaration from Kris Buckner ("Buckner"),
President of Investigative Consultants, Inc., in support of its
28 Supplemental Brief.  ECF No. 15-1.

United States District Court
For the Northern District of California

and arrested for the sale of counterfeit merchandise.  <u>Id.</u> ¶ 20.
Five counterfeit Coach handbags and three counterfeit Coach wallets
were recovered from Diva by the police.  Buckner Decl. ¶ 10.

**III. <u>LEGAL STANDARD</u>**

After entry of a default, the Court may enter a default
judgment.  Fed. R. Civ. P. 55(b)(2).  Its decision whether to do
so, while "discretionary," <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092
(9th Cir. 1980), is guided by several factors.

As a preliminary matter, the Court must "assess the adequacy
of the service of process on the party against whom default
judgment is requested."  <u>Bd. of Trs. of the N. Cal. Sheet Metal
Workers v. Peters</u>, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, *2
(N.D. Cal. Jan. 2, 2001).  If the Court determines that service was
sufficient, it may consider the following factors in its decision
on the merits of a motion for default judgment:

> (1) the possibility of prejudice to the
> plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the
> complaint, (4) the sum of money at stake in the
> action; (5) the possibility of a dispute
> concerning material facts; (6) whether the
> default was due to excusable neglect, and (7)
> the strong policy underlying the Federal Rules
> of Civil Procedure favoring decisions on the
> merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The
general rule of law is that upon default the factual allegations of
the complaint, except those relating to the amount of damages, will
be taken as true."  <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560
(9th Cir. 1977).  Therefore, for the purposes of this Motion, the

4

Court accepts as true the facts as presented in the Complaint.

**IV.  DISCUSSION**

### A.  Adequacy of Service

#### 1.  Diva Shoes & Accessories

Federal Rule of Civil Procedure 4(h) provides that a corporation, partnership, or other unincorporated association may be served in the manner prescribed by Rule 4(e)(1), which allows service to be perfected in the manner prescribed by state law. Fed. R. Civ. P. 4(h), 4(e)(1). California law provides that a corporation or unincorporated association may be served:

> by leaving a copy of the summons and complaint during usual office hours in . . . [the corporation or association's] office or . . . usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. 415.20(a). This method of service is deemed complete on the tenth day after the mailing. Id.

Here, service was left with "Huan Jain," the person in charge at Diva's store located at 7710-3 Serramonte Center, Daly City, California, on December 3, 2010, at 11:45 a.m. ECF No. 6 ("Diva Proof of Service"). On December 17, 2010, the summons, complaint and other relevant documents were mailed to Diva at the same address. Id. The Court finds that service of process upon Diva was adequate and complete by December 28, 2010.

#### 2.  Heryadi Yusuf and Rifky Yusuf

Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served in a judicial district of the United

United States District Court
For the Northern District of California

5

**United States District Court**
For the Northern District of California

States in accordance with state law.  California law provides that, if an individual cannot be personally served with reasonable diligence the individual may be served:

> by leaving a copy of the summons and complaint at the person's . . . usual place of business or usual mailing address . . . with a person apparently in charge of his or her office, place of business, or usual mailing address . . . and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. Proc. 415.20(b).  This method of service is also deemed complete on the tenth day after the mailing.  <u>Id.</u>

Here, the process server declares that he attempted to serve Heryadi Yusuf on December 3, 2010 and December 6, 2010, at the Diva store but was told both times that Heryadi Yusuf was not present. ECF No. 8 ("Heryadi Yusuf Proof of Service").  On December 7, 2010, at 4:35 p.m., service was left with "Gourney Jain," the person in charge at the Diva store.  <u>Id.</u>  On December 17, 2010, the summons, complaint, and other relevant documents were mailed to Heryadi Yusuf at the address where the copies were left.  <u>Id.</u>

The process server declares that he attempted to serve Rifky Yusuf at the Diva store on December 3, 2010.  ECF No. 7 ("Rifky Yusuf Proof of Service").  The person in charge at the Diva store informed the process server that Rifky Yusuf owned a kiosk called "iPod Accessories" across from the Diva store.  <u>Id.</u>  Rifky Yusuf was not present at the kiosk.  <u>Id.</u>  The process server returned on December 6, 2010, but Rifky Yusuf was again not present at the kiosk.  <u>Id.</u>  On December 7, 2010, at 4:40 p.m., the process server

**United States District Court**
For the Northern District of California

1  left service with "Joe Albert," the person in charge at the "iPod

2  Accessories" kiosk located at 7710 Serramonte Center, Daly City,

3  California.  Id.  On December 17, 2010, the summons, complaint, and

4  other relevant documents were mailed to Rifky Yusuf at the address

5  where the copies were left.  Id.

6      The Court finds that service of process upon Heryadi Yusuf and

7  Rifky Yusuf was adequate and complete by December 28, 2010.

8      **B.   Default Judgment**

9      After entry of a default, a court may grant a default judgment

10  on the merits of the case.  See Fed. R. Civ. P. 55.  A default

11  judgment may not be entered, however, against an infant or

12  incompetent person unless represented in the action by a general

13  guardian or other such representative who has appeared.  See id.

14  Furthermore, a default judgment may not be entered against an

15  individual in military service until after the court appoints an

16  attorney to represent the defendant.  See 50 U.S.C. App. § 521.

17  Heryadi Yusuf and Rifky Yusuf are not infants, incompetent persons,

18  or persons in military service.  Chan Decl. ¶ 5.[2]  Accordingly, the

19  Court may consider whether a default judgment may be entered

20  against Defendants.

21      Here, the majority of the Eitel factors favor default

22  judgment.

23         1.   Prejudice

24      Coach served a cease-and-desist letter upon Diva in September

25  2009 but to no avail.  If the motion for default judgment were to

26  be denied, then Coach would likely be left without a remedy.  Thus,

27

28  [2] Cindy Chan, attorney for Plaintiffs, filed a declaration in
support of the Motion.  ECF No. 11-2.

1  Plaintiffs would be prejudiced absent entry of default judgment.

2         2.   Merits of Plaintiffs' Substantive Claims and

3              Sufficiency of the Complaint

4         Taken together, the second and third Eitel factors essentially

5  require that "a plaintiff state a claim on which [it] may recover."

6  Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D.

7  Cal. 2002) (internal quotations omitted).  Coach asserts claims for

8  (1) trademark counterfeiting and infringement, 15 U.S.C. § 1114;

9  (2) false designation of origin, id. § 1125(a); (3) trademark

10 dilution, id. § 1125(c); and (4) related claims under state law.

11 See Compl.  Coach seeks to recover statutory damages in lieu of

12 actual damages as relief.  Mot. at 6.  Accordingly, the Court

13 examines the only one of Coach's claims for which statutory damages

14 are available -- its claim for trademark counterfeiting and

15 infringement.  See 15 U.S.C. § 1117(c) (providing for statutory

16 damages for trademark counterfeiting); see also Chanel, Inc. v.

17 Tshimanga, No. C-07-3592, 2008 U.S. Dist. LEXIS 118783, *17 (N.D.

18 Cal. July 15, 2008) (adopting same approach).

19       To prevail on its trademark infringement and counterfeiting

20 claim, Coach must prove that, without its consent, Defendants used

21 in commerce a reproduction or copy of Coach's registered trademark

22 in connection with the sale or advertising of any goods or

23 services, and that such use is likely to cause confusion, mistake,

24 or deceive customers. 15 U.S.C. § 1114(1)(a); Brookfield Commc'n v.

25 West Coast Entm't, 174 F.3d 1036, 1046-47 (9th Cir. 1999).  As

26 outlined in Part I above, Coach has properly alleged all of these

27 elements.  Taking these allegations to be true, as the Court must,

28 Coach has adequately stated a claim on which it may recover.

<div style="text-align: left; writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

### 3.   Amount of Money at Stake

Pursuant to the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, 238 F. Supp. 2d at 1176.  Here, Defendants have engaged in the sale and distribution of counterfeit goods bearing four of Plaintiffs' trademarks, and Defendants' continued sale of counterfeit Coach merchandise despite being served with a cease-and-desist letter augments the seriousness of their conduct.  Given Defendants' disregard of the cease-and-desist letter, the likelihood that Defendants' conduct may cause confusion or mistake or otherwise deceive customers, and Defendants' failure to comply with the judicial process or to participate in any way in the present litigation, the imposition of a substantial monetary award is justified.  The amount of money at stake is therefore proportionate to Defendants' conduct, especially in light of the fact that the size of the award is limited by what the Court considers just.

### 4.   Possibility of Dispute Concerning Material Facts

The fifth Eitel factor considers the possibility of dispute as to any material facts in the case.  Here, Plaintiffs filed a well-pleaded complaint alleging the facts necessary to establish their claims and provided evidence in the form of Buckner's declaration. Defendants have not responded to any of the proceedings in this case, and thus no dispute has been raised regarding the material averments of the Complaint.  The likelihood that any genuine issue may exist is, at best, remote.  This factor therefore favors the entry of default.

///

5.   <u>Whether Default Was Due to Excusable Neglect</u>

Defendants have had nearly five months to respond to the Complaint and have not done so.  There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect.  Defendants' failure to appear after being served with the Complaint indicates that their failure to appear was willful.

6.   <u>Strong Policy Favoring Decision on the Merits</u>

Finally, the mere existence of Federal Rule of Civil Procedure 55(b) indicates that the seventh <u>Eitel</u> factor is not alone dispositive.  <u>Pepsico</u>, 238 F. Supp. 2d at 1177.  Moreover, Defendants' failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Therefore, the seventh <u>Eitel</u> factor does not preclude the Court from entering default judgment against Defendants.

**C.   <u>Remedies</u>**

1.   <u>Statutory Damages</u>

The remedies available to a plaintiff who prevails on a claim for trademark infringement and counterfeiting under 15 U.S.C. § 1114 are listed under 15 U.S.C. § 1117(a)-(c).  Under § 1117(a), a registered mark holder may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action, subject to the principles of equity.  Section 1117(b) requires the court to treble the damages assessed under subsection (a) if the defendant "intentionally us[es] a mark or designation, knowing such mark . . . is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services."  Section 1117(c) permits a plaintiff to elect statutory

**United States District Court**
For the Northern District of California

1  damages, instead of actual damages and profits, in cases involving

2  the use of a counterfeit mark in connection with the sale of goods.

3  Plaintiffs who elect statutory damages may recover "not less than

4  $1,000 or more than $200,000 per counterfeit mark per type of goods

5  or services sold, offered for sale, or distributed, as the court

6  considers just."  15 U.S.C. § 1117(c)(1).  Additionally, in cases

7  where the defendant's conduct is willful, a court may enhance the

8  statutory damages award to an amount "not more than $2,000,000 per

9  counterfeit mark per type of goods or services sold, offered for

10 sale, or distributed, as the court considers just."  15 U.S.C.

11 § 1117(c)(2).  If a plaintiff elects to recover statutory damages,

12 the court has wide discretion in determining the amount of

13 statutory damages to be awarded.  <u>Chanel, Inc. v. Lin</u>, No. C-09-

14 04996, 2010 U.S. Dist. LEXIS 61295, *39 (N.D. Cal. May 7, 2010)

15 (citing <u>Columbia Pictures Television, Inc. v. Krypton Broad. of</u>

16 <u>Birmingham</u>, 259 F.3d 1186, 1194 (9th Cir. 2001)).

17     In the instant case, where Plaintiffs have established that

18 Defendants' conduct was willful, Plaintiffs may recover statutory

19 damages pursuant to § 1117(c) in an amount not less than $1,000 and

20 not more than $2,000,000 per counterfeit mark per type of goods

21 sold, as the Court considers just.  Buckner's declaration states

22 that Defendants offered for sale two types of goods -- wallets and

23 handbags -- and infringed four distinct Coach Marks.  However,

24 Coach does not specify whether each of the marks was infringed by

25 both a wallet and a handbag.  The Court cannot assume that each of

26 Coach's marks was infringed by both a wallet and a handbag.

27 Rather, applying the phrase "per counterfeit mark per type of goods

28 sold" requires the Court to look at each trademark and determine

**United States District Court**
For the Northern District of California

1   how many types of goods infringe that mark.  <u>See</u>, <u>e.g.</u>, <u>Tshimanga</u>,

2   2008 U.S. Dist. LEXIS 118783 at *36.  Given the lack of evidence on

3   this point, the Court will assume that each mark was infringed by

4   either a wallet or a handbag, but not both.  Under § 1117(c),

5   therefore, Coach may recover not less than $4,000 and not more than

6   $8,000,000.

7        Section 1117(c) does not give any specific guidance as to how

8   a court should determine an appropriate statutory damages award.

9   "Although the statutory damages need not reflect the defendants'

10  unlawfully obtained profits, some district courts use § 1117(b) as

11  a guide for setting damages under § 1117(c). In doing so, courts

12  both counteract the profitability of counterfeiting and execute the

13  punitive purposes of the statute."  <u>Chanel, Inc. v. Doan</u>, No. C-05-

14  03464, 2007 U.S. Dist. LEXIS 22691, *13 (N.D. Cal. Mar. 13, 2007)

15  (calculating statutory damages by estimating defendant's profits

16  and trebling for willfulness).  In other words, because statutory

17  damages are meant to serve as a substitute for actual damages the

18  Court should discern whether the requested damages "bear some

19  relation to the actual damages suffered." <u>Coach, Inc. v. Ocean</u>

20  <u>Point Gifts</u>, No. C-09-4215, 2010 U.S. Dist. LEXIS 59003, *15 (D.

21  N.J. June 14, 2010) (internal citations omitted).

22       When determining the appropriate amount of statutory damages

23  to award under § 1117(c), some courts have considered the following

24  factors that guide the award of statutory damages under an

25  analogous provision of the Copyright Act: (1) the expenses saved

26  and the profits reaped by the defendant; (2) the revenues lost by

27  the plaintiff; (3) the value of the copyright; (4) the deterrent

28  effect on others besides the defendant; (5) whether the defendant's

conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  See, e.g., Tshimanga, 2008 U.S. Dist. LEXIS 118783 at *34; Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1237-38 (E.D. Cal. 2008).

Here, Plaintiffs request $1,000,000 in statutory damages. Mot. at 2.  They contend that such a large award is necessary to deter Defendants and other potential counterfeiters from selling counterfeit Coach merchandise.  Id. at 7.  Plaintiffs rely on Philip Morris U.S.A., Inc. v. Castworld Prods., 219 F.R.D. 494, 502 (C.D. Cal. 2003) to support their request.  In Philip Morris, the court awarded $2,000,000 in statutory damages against a defendant who imported 8,000,000 counterfeit cigarettes.  Id.  The court found such a large award appropriate in light of the defendant's "importation of large, commercial quantities" of counterfeit cigarettes "having a street value of millions of dollars."  Id. at 500-01.

Coach's reliance on Philip Morris is misplaced.  Here, there is no evidence that Defendants were importing "large, commercial quantities" of counterfeit Coach merchandise, and the merchandise at issue certainly did not have a street value of millions of dollars.  Furthermore, the Court notes that in other recent cases brought by Coach, Coach has found much lower awards sufficient to deter violators.  For instance, in Coach, Inc. v. Cheap Sunglasses, No. 09-CV-1059, 2010 U.S. Dist. LEXIS 68200, *5-6 (S.D. Cal. July 6, 2010), Coach sought only $10,000 in statutory damages where a website willfully infringed Coach trademarks by selling counterfeit

**United States District Court**
For the Northern District of California

Coach eyewear.  The court found a $6,000 award appropriate.  <u>Id.</u> at *6.  Similarly, in <u>Coach, Inc. v. Cosmetic House</u>, No. C-10-2794, 2011 U.S. Dist. LEXIS 32924, *20 (D.N.J. Mar. 29, 2011), Coach sought a $100,000 award where a retail store willfully infringed Coach trademarks by selling counterfeit sunglasses.  The court determined that an award of $10,000 was appropriate.  <u>Id.</u>  In <u>Ocean Point Gifts</u>, Coach sought $100,000 per mark per type of goods sold where defendants willfully infringed Coach trademarks by selling counterfeit handbags, wallets, and other items at a retail outlet.  2010 U.S. Dist. LEXIS 59003 at *18.  The court found $10,000 per mark per type of goods appropriate and awarded a total of $200,000.  <u>Id.</u> at *19.

Taking the above into account, the Court proceeds to consider the seven factors commonly considered in copyright law.

a.  <u>Expenses Saved and Profits Reaped</u>

The lack of discovery in this case leaves no data as to Defendants' expenses saved and profits reaped, but a rough estimate can be made based on the data available and a few reasonable assumptions.[3]  Buckner's declaration suggests that an average of between eight and nine counterfeit Coach items -- consisting of a mixture of handbags and wallets -- were displayed for sale on a typical day.[4]  The only pricing information made available to the

---

[3] The court in <u>Ocean Point Gifts</u> applied similar assumptions to ensure that its award of statutory damages was roughly proportional to the amount of actual damages likely incurred.  2010 U.S. Dist. LEXIS 59003 at *20-21.  Given the lack of discovery in this case, the Court finds that applying some reasonable assumptions is the best -- and only -- approach available to calculate a ballpark estimate of Plaintiffs' actual damages.

[4] A total of nine counterfeit Coach items were displayed for sale when investigators visited Diva on August 4, 2010, and a total of eight counterfeit Coach items were seized from Diva by police on

United States District Court

For the Northern District of California

1  Court is the fact that an investigator purchased a handbag for

2  $43.69.  If the wallets were offered at a similar price, then the

3  value of the displayed counterfeit Coach merchandise on a typical

4  day was approximately $396.  Generously assuming that the store

5  sold all of its displayed counterfeit Coach inventory each week and

6  had a profit margin as high as 300 percent, Defendants' profits

7  would have been about $891 per week.  Coach first discovered

8  Defendants' infringing activity in September 2009 and alleges that

9  it continues to this day.  Over this approximately 78-week period,

10  the amount of Defendants' profits from infringing the Coach Marks

11  would be $23,166.  Given Defendants' willful infringement, an award

12  of actual damages under § 1117(a)-(b) would result in treble this

13  amount -- a sum equal to $69,498.  While these are of course very

14  rough estimates, they nevertheless suggest that the requested award

15  of $1,000,000 is grossly disproportionate to Coach's actual

16  damages.

17           b.  Revenues Lost

18       Coach has provided no evidence of its revenues lost, either as

19  a result of Defendants' infringing activities or as a result of

20  counterfeiting in general.  It has stated that it typically charges

21  between $148 and $298 for bags similar to those sold by Defendants.

22  Pl.'s Supp. Br. at 7.  Given that the counterfeit bags sold by

23  Defendants are significantly less expensive than authentic Coach

24  merchandise, the shoppers who buy from Defendants are arguably not

25  ─────────────────────────────────────────────────────────────

26  August 19, 2010.  Coach notes that investigators observed about
    seventy counterfeit items during the first visit to Diva in

27  September 2009, but Buckner's declaration makes clear that these
    items were comprised of Chanel, Gucci, and Louis Vuitton branded

28  merchandise in addition to counterfeit Coach items. Buckner Decl.
    ¶¶ 5, 7, 10.

**United States District Court**
For the Northern District of California

1  likely to purchase authentic Coach products.  Thus, the revenues

2  lost as a direct result of Defendants' infringing activities may

3  not be substantial.  Absent some evidentiary showing, the Court

4  cannot reach any conclusion about the magnitude of lost revenues to

5  Coach.

c.  <u>Value of the Intellectual Property</u>

7       The Coach Marks are extremely valuable because they are

8  affiliated with billions of dollars in sales volume and more than a

9  hundred million dollars have been expended in advertising and

10 marketing associated with the Marks.  Compl. ¶ 16.

d.  <u>Willfulness of Defendants' Conduct</u>

12      Defendants' conduct was undoubtedly willful, as they continued

13 their infringing conduct after receiving a cease-and-desist letter.

e.  <u>Defendants' Lack of Cooperation in Providing</u>

15          <u>Records</u>

16      Defendants have not provided any discovery or participated in

17 this litigation in any way.

f.  <u>Deterrent Effect on Defendants</u>

19      As Defendants operate only a single retail store of moderate

20 scale based on the investigators' observations, it is likely that

21 they can be deterred by a moderate damages award.  Moreover, the

22 deterrent effect of a monetary award will be in addition to the

23 deterrent effect of the criminal action also brought against

24 Defendants.

g.  <u>Deterrent Effect on Others</u>

26      A significant award against Defendants would clearly have some

27 kind of deterrent effect on other would-be infringers, although the

28 magnitude of this effect is difficult to determine.

**United States District Court**
For the Northern District of California

1    Taking into account all of the above, the Court finds $140,000

2    to be an appropriate award.  This amount is roughly double the

3    liberal estimate of Coach's actual damages calculated above.  It is

4    within the guidelines established by Congress, takes into account

5    the willfulness shown by continuing to sell counterfeit merchandise

6    after receiving a cease-and-desist letter and the culpability of

7    failing to respond, and is significant enough to serve as

8    compensation to Coach and a deterrent to both the Defendants and

9    others.  This award is also in a range consistent with other recent

10   cases in this district and others that involved similar

11   merchandise.  See, e.g., Doan, 2007 U.S. Dist. LEXIS 22691 at *13

12   (N.D. Cal. Mar. 13, 2007) (awarding $127,701 where defendant sold

13   counterfeit handbags on the internet); Tshimanga, 2008 U.S. Dist.

14   LEXIS 118783 at *34 (awarding $75,000 per violation for a total of

15   $450,000 where defendant sold counterfeit handbags and wallets on

16   the Internet); Ocean Point Gifts, 2010 U.S. Dist. LEXIS 59003 at

17   *20-21 (awarding $200,000 where defendant sold counterfeit Coach

18   handbags, scarves, and hats at a small retail store).

19            2.  Injunctive Relief

20   In addition to damages, Coach requests a permanent injunction

21   enjoining Defendants from using Coach trademarks in connection with

22   the sale and offer for sale of infringing products.  The Lanham Act

23   gives the court "power to grant injunctions according to the rules

24   of equity and upon such terms as the court may deem reasonable, to

25   prevent the violation" of a trademark holder's rights.  15 U.S.C.

26   § 1116(a).  Permanent injunctions are routinely granted in cases

27   like the instant one where a defendant has not appeared in the

28   action at all.  Philip Morris, 219 F.R.D. at 502; Pepsico, 238

F. Supp. 2d at 1178; Cheap Sunglasses, 2010 U.S. Dist. LEXIS 68200 at *6.  Accordingly, the Court grants Coach's request for a permanent injunction enjoining Defendants from using Coach trademarks in connection with the sale and offer for sale of infringing products.

>    3.  Costs

Coach also requests costs under 15 U.S.C. § 1117(a), which authorizes recovery of the costs of an action for the violation of any right of the registrant of a trademark.  Coach is entitled to the costs of this action.  See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993).  Coach may submit its Bill of Costs in accordance with Civil Local Rule 54-1.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

United States District Court
For the Northern District of California

18

**United States District Court**
For the Northern District of California

1   **V.    CONCLUSION**

2        The Court GRANTS the Motion for Default Judgment filed by

3   Plaintiffs Coach, Inc. and Coach Services, Inc. against Defendants

4   Diva Shoes & Accessories, Heryadi Yusuf, and Rifky Yusuf.  The

5   Court enters JUDGMENT in favor of Plaintiffs against Diva Shoes &

6   Accessories, Heryadi Yusuf, and Rifky Yusuf in the amount of

7   $140,000 plus Plaintiffs' costs.  Defendants are PERMANENTLY

8   ENJOINED from infringing any of Plaintiffs' trademarks.

9        Plaintiffs shall submit their Bill of Costs within fourteen

10  (14) days of this Order as provided by Civil Local Rule 54-1.

11  Failure to do so will result in a waiver of costs.

12

13       IT IS SO ORDERED, ADJUDGED, AND DECREED.

14

15  Dated: April 19, 2011         

16                                UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28